*Note,* See The People v. Needles, *Ante* 361.

---

THE PEOPLE OF THE STATE OF ILLINOIS, *ex relatione* JOHN DAVLIN, *v.* THE AUDITOR OF PUBLIC ACCOUNTS.

*Motion for Mandamus.*

Under the statutes in relation to the sale of school lands, the school commissioner may be considered the legally constituted agent, both for the State and the purchaser, to receive the patents, and when they are delivered to him, in compliance with the statute, the title is divested out of the State, and becomes vested in the purchaser.

Where lands were sold by a school commissioner, one fourth of the purchase money being paid in hand, and a credit of one, two, and three years given on the balance, and certificates delivered to the purchasers, containing a stipulation, that, upon the payment of the remainder of the purchase money, patents should be issued to the purchasers: *Held,* that the certificates could not be understood, as in any manner affecting the provisions of the act of 1829, requiring the Auditor to forward the patents when he received the returns of the school commissioner, or as restraining him from issuing them, before the expiration of the term of credit.

Where the law authorizing the sale of school lands, on credit, required the commissioners to take a mortgage upon the land sold, and also personal security for the payment of the purchase money, the Court will presume that they were taken.

The presumption is that a public officer discharges his duty, until the contrary is shown.

An assignee of a certificate of the purchase of a portion of school land, assigned subsequently to the issuing of the patent to the original purchaser, and its delivery to the school commissioner, is not entitled to receive the patent in his own name, under the act of 1837. That act permits a patent to be issued to the last assignee, only when a patent has not issued to the first purchaser.

*Semble,* that where a patent has been improperly issued by the Auditor, to a person not entitled to receive the same, the Supreme Court will not compel the Auditor, by *mandamus,* to issue another.

A patent cannot be set aside or vacated, upon a motion for *mandamus* against the Auditor, requiring him to issue another patent for the same land.

J. YOUNG SCAMMON, for the relator.

J. LAMBORN, Attorney General, for the respondent.

Breese, Justice, delivered the opinion of the Court:

On the 22d day of February, a motion was submitted by J. Y. Scammon, on behalf of John Davlin, the relator, for a rule upon the Auditor of Public Accounts, to show cause why he should not issue a patent to the relator, for certain lots of school land sold by the school commissioner of Cook county. Notice having been given to the Auditor, of this motion, the attorney, in support of it, presents the certificate of the school commissioner of Cook county, to the Auditor, showing that John B. Beaubien bought the lands in question, on the 23d day of October, 1834, at the sale of the school lands at Chicago ; that since the sale, Beaubien has sold, assigned, and transferred all his right, title, and interest to the relator, by assignment on the back of the certificate of purchase granted to him ; that the relator has paid up the full amount of the purchase money due for the lots, and is entitled to receive a patent for the same from the Governor of the State, under the act of the 16th of January, 1837. (1) He also exhibits a paper purporting to be the original certificate of purchase to Beaubien, showing the purchase by him, on the 23d of October, 1834, and that one fourth of the purchase money was paid at the time of the sale, and the residue of the payments to be completed in one, two, and three years, after which he should be entitled to a patent. This certificate purports to have been assigned to the relator, by Beaubien, on the first day of March, 1839. He also exhibits the certificate of the attorney of the school fund, &c., dated Feb. 1, 1841, showing that the amounts due on the original purchase have been paid in full, but by whom is not stated.

He further exhibits his own affidavit, made at the time of submitting the motion, setting forth, that he, as the attorney of the relator, presented the original certificate of purchase and assignment to the relator, to the Auditor of Public Accounts, and requested him to issue a patent to the relator for the lots of land mentioned therein, which the Auditor refused to do, on the ground that the patent was issued in 1836, to Beaubien, the original purchaser, and forwarded to the school commissioner of Cook county. The affidavit further states that the patents were issued without any request from the school commissioner, and that Beaubien was not entitled to the same, nor did he claim any title to them ; that he had not paid for the lots, and that the patents have never been delivered to him, but remain in the office of the school commissioner, and concludes by stating, that at the time of the purchase of the lot of land, it was not the practice to issue patents until the lots were paid for.

In answer to the rule, the Auditor returns, that his refusal to issue the patent to the relator, is caused by the fact that the patent was issued to the original purchaser before the assignment to him, and

(1) Acts of 1837, 153, 154 ; Gale's Stat. 156.

before the passage of the act of the legislature, authorizing patents to issue to the assignee of such certificates ; and that it has been forwarded to the school commissioner of Cook county, for the original purchaser.

Upon this return, the relator moves for a peremptory *mandamus* to compel the Auditor to issue the patent to him.

The determination of this motion renders necessary an examination into the legislation of the State, on the subject of the school lands.

The first act applicable to this case, is that of the 22d of January 1829. (1) The sixth section of which provides, that the lands shall be sold under the direction of the school commissioner, at public auction ; the seventh that payment shall be made in cash, and that the commissioner shall give a certificate thereof to the purchaser, or a receipt, particularly describing the land by its subdivisions, the price it sold for, and the purchaser's name and place of residence. The eighth section provides that the commissioner shall make, to every regular term of the County Commissioners' Court of his county, a return, in writing, of all the lands sold, the price, quantity, &c., and the name and residence of the purchaser, which he shall record in a book ; and the County Commissioners are required to make out and forward, every three months, to the Auditor, a similar statement and return, which shall be recorded by the Auditor, in like manner ; and it is made the duty of the Auditor to make out, in the name of the Governor, patents for the lands sold, which shall vest in the purchaser the fee simple ; and the Auditor is required, after having made an entry of their date, to forward them to the proper school commissioner, to be by him delivered to the persons entitled to them, on presentation and surrender of the original certificates.

On the 12th of January, 1833, an act was passed,(2) authorizing sales of school lands on a credit of one, two, and three years, the purchaser giving a mortgage on the land, and good personal security for the payment of the purchase money, to be approved by the County Commissioners' Court.

It will be observed, that this law makes no other change in the mode of disposing of the lands, and none in the acts to be performed by the school commissioner, County Commissioners, and Auditor, so far as vesting the title in the purchaser is concerned. The former act, in these particulars, is unchanged, and the duty of the Auditor, to send the patents to the school commissioner, for delivery to the purchasers, on the receipt of the return from the County Commissioners, remaining the same.

By the act of 1833, a mortgage on the land sold, and personal security, were substituted for cash ; and it might be good policy

(1) Dig. School Laws 9, 10.                    (2) *Ibid.* 19.

first to vest the title by patent, in the purchaser, on which the mortgage, to be given by him, was to operate.  The school commissioner may be considered the legally constituted agent of both parties, to receive the patents, and, by delivering them to him, in compliance with the act of 1829, the title was divested out of the State, and became vested in the purchaser.

The recital in the certificate of purchase, that a patent would issue on the payment of the balance of the purchase money, cannot be understood as in any manner affecting the provisions of the act of 1829, requiring the Auditor to forward the patents when he received the returns, or as restraining him from issuing them before the expiration of the term of credit.

It was as necessary that the patents should issue upon a credit sale, as under the cash system, as the foundation of the mortgage the purchaser was required to give on the land as security for the purchase money, and as evidence of " a sure, perfect, and absolute title to the land so purchased and patented."

That this mortgage was given, and also personal security, will be presumed, in favor of a public officer whose duty it was made to receive them.

The patents, then, having been sent, in 1836, to the school commissioner, in obedience to the law, although Beaubien may not have received them, and although they may yet remain with that officer, the State has consummated the act of purchase, and parted with her title, and to the person who then had the undisputed interest in the lands.  Assignments of these certificates were not authorized until the passage of the act of January 16th, 1837, and the relator acquired no interest until March, 1839, consequently he could not object to the act of the Auditor transmitting the patents.

The last mentioned act permits a patent to issue to the last assignee, but that must be understood, in cases when no patent had issued to the first purchaser.  It would be unreasonable to suppose that the legislature intended to require the Auditor, after once issuing a patent, to recall it; give him power to cancel it, efface the record of it from his books, and issue another to an assignee.  Such a construction of the act would not be warranted by its terms, obvious meaning, and import.

But, conceding that the patent was issued improperly, and delivered to the school commissioner before the payments were completed, without any request from the purchaser, that he did not complete the payments for the land, and his assignee did, and leaving out of view all considerations of the interest of other persons not before the Court, which may be affected by the proceeding ; and admitting the power of the Court to award a *mandamus* to compel a public officer to perform an act, which he is required by law to perform, and about which he has no discretion, the Court is satisfied that a case is not presented by the papers and evidence before it, to justify

any other order than one denying the motion, at the costs of the relator. The patent exists; the State has parted with her title by issuing it, and it cannot be set aside or vacated by a proceeding of this kind.

*Motion denied.*